UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES L. LESHORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:06-CV-233-TS |
| ) | |
| MARIA R. SABANSKI, ACHIM CULLMAN, ) | |
| and TRINA L. HAYWOOD, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

James L. Leshore, a *pro se* prisoner, submitted a Complaint under 42 U.S.C. § 1983 alleging that Allen County Jail Officials Maria Sabanski, Akeem Cullman, and Katrina Haywood punished him without due process of law. After the Court dismissed claims pursuant to the Prison Litigation Reform Act's mandatory screening process, only one claim remained: that the Plaintiff was segregated from the general population and placed in a cell in the receiving area of the Jail as punishment without due process of law. On March 8, 2007, the Defendants moved for summary judgment. The Motion has been fully briefed. For the reasons stated in this Opinion and Order, the Defendants' Motion for Summary Judgment is granted.

**BACKGROUND**

On June 13, 2006, the Plaintiff filed his pro se Complaint against the Allen County Jail Classification Committee and three Jail Officials. He alleged that he was placed in a room in the receiving part of the Jail and kept under twenty-four-hour surveillance for sixty-three days. He maintained that Jail officials could have moved him to another block despite a keep-separate order because there were no inmates on that block that he could not be housed with. On June 23,

2006, the Court conducted a mandatory screen of the Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. The Court dismissed all but one claim:

> Although the jail may have had a legitimate security reason for placing Mr. Leshore in a receiving room, giving him the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, his allegation of pretext states a claim that he was punished without due process. Because he alleges that Sabanski and Cullman were personally involved with the decision to house him in the receiving room and that Jail Commander Haywood knew and approved his placement there, the Plaintiff may proceed with his due process claim against these three individuals.

(DE 4 at 2–3.)

On August 21, 2006, the Defendants answered the Complaint. On March 8, 2007, they moved for summary judgment. The Defendants argue that the Plaintiff's segregation from the general population did not constitute a denial of due process because it was done for legitimate security reasons, not as punishment. The Defendants submit the Plaintiff's deposition testimony, the Affidavit of Captain Trina L. Haywood, and the Affidavit of Achim Cullman in support of their Motion. Haywood is the Assistant Jail Commander of the Allen County Police Department and she supervised the operations of the Allen County Jail during the time the Plaintiff alleges his rights were violated. Cullman is an Allen County Jail Confinement Officer who had contact with the Plaintiff while performing his inmate housing assignment and classification duties.

On March 19, the Defendants notified the Plaintiff that they moved for summary judgment and informed him of his obligation to respond with affidavits or other documentary evidence contradicting the Defendants' assertions. On April 12, the Plaintiff filed a seven-paragraph Response to the Motion for Summary Judgment. He argues that the Defendants did not try to make changes that would have allowed him to be housed on one of two appropriate cell blocks. He also points to a later cell assignment as proof that the Defendants' security

2

concerns were not legitimate. However, the Plaintiff does not designate any evidence or cite to such evidence to support his propositions.

In the Defendant's April 27 Reply, they argue that even if the Plaintiff's factual assertions are true, he has not refuted the legitimate security reasons that justified his cell placement.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking

summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

**STATEMENT OF FACTS**

**A.     The Defendants' Statement of Material Facts**

The Defendants' designated materials establish that the Plaintiff was placed in a cell in the Allen County Jail's Receiving area for legitimate security reasons:

The Defendants present three different security concerns that impacted where, and with whom, the Plaintiff could be housed. First, he was assigned the Jail's highest security classification because of behavioral problems, including a hunger strike that required him to be put on suicide watch. Second, the Plaintiff had made threats to other inmates, refusing to be housed with any inmate who had a history of child molestation. Third, the Plaintiff was in protective custody, which required that he be separated from most of the Jail population.

On September 13, 2005, the Plaintiff became a pretrial detainee at the Allen County Jail. Immediately, he was placed in protective custody at both his and the U.S. Marshals' request. Inmates that are in protective custody at the Allen County Jail are housed in one of two protective custody blocks: the "L Block" or the "M Block." The Plaintiff was housed on the M Block. On November 15, 2005, when the Plaintiff was moved from one cell in M Block to another, he refused to go to the new cell, stating that if he was put in a cell with a child molester, he would beat him.

On December 6, 2005, the Plaintiff began a hunger strike. As a result, he was placed on twenty-four-hour observation for a week. On December 13, after a routine security level review, the Plaintiff was assigned a level 1 security classification. This is the highest risk assessment level and inmates on level 1 can only be housed with other level 1 inmates due to their activity

5

and privilege restrictions. Additionally, during this time, the Plaintiff had a "Keep Separate" order against another inmate housed in M Block.

Because the Keep Separate order prevented the Plaintiff from being housed on M Block, L Block remained the only possible place to put him. Only one cell on L Block contained level 1 inmates and one of these inmates had a history that included an offense of child molestation. Determining that the Plaintiff could not be housed in either the M or L Block, the Plaintiff was placed in a cell in Receiving, a holding area in the Allen County Jail. The Plaintiff remained in Receiving from December 13 to January 31, 2006, about forty-nine days. During this time, his housing status was reviewed periodically. Each time it was determined that no appropriate placement existed in Blocks M or L while the Plaintiff remained at a level 1 security classification.

On January 11, 2006, the Plaintiff's security level was downgraded to level 2. As with level 1 inmates, level 2 inmates are only kept with other inmates on the same level. Even with his lower security level, there was no cell on L or M Block where the Plaintiff could be housed because of the other restrictions on who he could share a cell with. This changed on January 21, 2006, when another level 2 inmate arrived on M Block. As a result of the Jail's intermittent review of his housing status, the Defendants discovered on January 31 that the Plaintiff could be moved to a cell on M Block with the level 2 inmate who had arrived on January 21. The Plaintiff was moved to the M Block at this time.

**B.     The Plaintiff's Response**

The Plaintiff claims in his Response that his review of the housing sheets for the relevant period reveals that the Defendants could have moved other inmates around to allow him to be housed on the L or M Blocks. This statement, in addition to being conclusory, is not supported by any citation to the record. In fact, the Plaintiff's entire Response is devoid of any citation to admissible evidence, despite the Defendants' Notice to the Plaintiff that such detail and support is required by the Federal Rules of Civil Procedure. The Plaintiff's Response does not contain a "'Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigation." N.D. Ind. L.R. 56.1(a). Nor does the Plaintiff submit the equivalent of such a statement. Therefore, the facts claimed by the Defendants and supported by admissible evidence are "admitted to exist without controversy." N.D. Ind. L.R. 56.1(b).

**DISCUSSION**

The Plaintiff has not come forward with evidence that would reasonably permit the finder of fact to determine that his segregation was punishment, imposed without due process of law. Rather, the undisputed evidence is that the Defendants placed the Plaintiff in Receiving for legitimate security reasons.

The Plaintiff was allowed to proceed with his claim against the Defendants under the theory that the state cannot, consistent with the Fourteenth Amendment's due process clause,

7

punish pre-trial detainees. *Bell v. Wolfish*, 441 U.S. 520, 534–35 (1979). However, maintaining jail security is an appropriate justification for placing restrictions on pretrial detainees. *Id.* at 540.

> Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial. . . . [I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.

*Id.* at 540.

Because it is not constitutionally prohibited punishment, administrative segregation of a detainee for non-punitive reasons does not require the government to first provide due process protections. *Zarnes v. Rhodes*, 64 F.3d 285, 291–92 (7th Cir. 1995) (holding that placing detainee in administrative segregation for her protection and the protection of other inmates without due process did not violate the constitution); *see also Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (stating that no due process is required if detainee is placed in segregation "not as punishment but for managerial reasons"). In *Higgs*, the court gave examples of non-punitive, managerial reasons that would justify placing a detainee in segregation: when the detainee requires protection from other prisoners or the staff requires protection from the detainee's violent propensities; when a detainee is considered a suicide risk, or; when a cell in segregation is the only one vacant when a detainee arrives at the jail. *Id.* "As long as the purpose was indeed a preventive rather than a punitive one, he would not be entitled to notice and a hearing." *Id.*

The Plaintiff's restrictions on contact with other inmates, either for their safety or his own, reveals a legitimate government interest in placing the Plaintiff in Receiving until a cell

8

became available on L or M Block with another level 1 or level 2 inmate with whom he was not prohibited to have contact. There is no evidence in the record that calls into dispute the Defendants' security and managerial reasons for not putting the Plaintiff on the L or M Blocks before January 31, 2006. The Plaintiff's unsupported narrative that more could have been done to move him is not adequate because "a plaintiff's speculation is not a sufficient defense to a summary judgment motion." *Karazanos v. Navistar Int'l Transp. Copr.*, 948 F.2d 332, 337 (7th Cir. 1991). Moreover, summary judgment is the stage in a Plaintiff's lawsuit where he must show what evidence he has that would convince a trier of fact to accept his version of events. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Yet the Plaintiff offers no evidence from which it may be inferred that he was placed in the Receiving area cell for reasons unrelated to security or as punishment. Based on the evidence of record, there is no material issue of fact that requires a trial and the Defendants are entitled to summary judgment.

## CONCLUSION AND ORDER

For the foregoing reasons, the Defendants' Motion for Summary Judgment [DE 32] is GRANTED. The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on May 22, 2007.

                     s/ Theresa L. Springmann
                    THERESA L. SPRINGMANN
                    UNITED STATES DISTRICT COURT